UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

*In re*:

WILLIAM J. MOSSUTO
and LISA M. MOSSUTO,

Case No. 24-11826-13

Debtors.

## DECISION ON DEBTORS' OBJECTION TO
## CLAIM NUMBER 4 OF CRS PROPERTIES, LLC

An Order on Summary Judgment was entered in Sawyer County Circuit Court granting strict foreclosure in favor of Creditor CRS Properties, LLC ("CRS"), and against William and Lisa Mossuto ("Debtors"). The Order also dismissed the counterclaims and third-party claims of the Debtors against CRS. An appeal of the Order was filed by Debtors and is pending in state court.

Debtors then filed a Chapter 13 bankruptcy petition. CRS filed a claim secured by Debtors' real property. The claim includes copies of the Order on Summary Judgment and the Findings of Fact, Conclusions of Law, and Judgment of Strict Foreclosure.

The claim objection asks this Court to value the claim by reducing the claim amount for various damages Debtors assert they suffered. The parties agree that the claim objection needs to be resolved as a preliminary matter before determinations can be made on confirmation of a plan or a decision on a motion for relief from stay. So, it is the estimation of CRS's claim the Court must determine.

## FACTS

Debtor William Mossuto bought real property, including a house, from CRS in 2013 by land contract.[1] The house was destroyed in a fire in 2014.[2] The parties amended the land contract in February 2015 to finance an extra $55,000 for the Debtors to rebuild the house. The amended contract stated that the total principal balance due was $120,000, with interest accruing at 6.25%.[3] The parties continued under this amended agreement through 2021.

CRS filed a foreclosure action in Sawyer County Circuit Court in May 2022 naming the Debtors as defendants. Debtors filed an answer with affirmative defenses, counterclaims, and a third-party complaint against the principals of CRS and an affiliate.[4] The counterclaims included allegations that the land contract obliged CRS to make monthly insurance payments to cover the house and that CRS failed to do so.[5] And Debtors argue that payments had been misapplied. CRS denied these claims.[6]

---

[1] Debtors' Brief in Support of Claim Objection, ECF No. 84, Ex. B., p. 4 of 30; CRS's Brief in Opposition, ECF No. 85, Ex. 1, p. 2 of 24.

[2] Debtors' Brief in Support of Claim Objection, ECF No. 84, Ex. B., p. 5 of 30.

[3] Debtors' Brief in Support of Claim Objection, ECF No. 84, Ex. B., p. 5 of 30; CRS's Brief in Opposition, ECF No. 85, Ex. 1, pp. 4 and 5 of 24, ¶ 13.

[4] Sawyer Cty. Case No. 22CV53; Debtor's Objection to CRS's Claim, ECF No. 52, Ex. A, p. 3 of 31.

[5] Debtors' Brief in Support of Claim Objection, ECF No. 84, Ex. B., p. 4 of 30.

[6] CRS's Brief in Opposition, ECF No. 85, Ex. 1, p. 3 of 24, ¶¶ 4–7.

The parties cross-moved for summary judgment, which the state court initially denied.[7] The court allowed the parties to submit affidavits and further briefs in support, and then held a second hearing on the summary judgment motions in August 2024.

The state court granted CRS's motion for summary judgment, denied Debtors' cross motion, and dismissed Debtors' counterclaims and third-party complaint.[8] The court entered an order in favor of CRS, and the following findings of fact and conclusions of law:

- [Debtors] have defaulted on the required payments in said Land Contract and such default has continued for more than thirty (30) days.

- There is now due and unpaid on the Land Contract as of August 16, 2024, the total sum of $132,910.73, which consists of a principal balance of $111,668.41, plus accrued interest in the amount of $21,242.32, which continues to accrue interest at the rate of 6.5% for a per diem interest after the date of judgment of $19.12 per day.

- [CRS] is entitled to the relief sought in its complaint of a judgment of strict foreclosure, together with reasonable attorney fees and costs incurred in bringing this action.

  . . .

- A judgment of strict foreclosure is entered against [Debtors] and in favor of [CRS] for the property described herein.[9]

---

[7] Debtor's Objection to CRS's Claim, ECF No. 52, Ex. A, p. 8 of 31.

[8] CRS's Brief in Opposition, ECF No. 85, Ex. 6.

[9] CRS's Brief in Opposition, ECF No. 85, Ex. 6, p. 4 of 4.

3

Debtors have appealed the state court judgment. The appeal is pending in the Wisconsin Court of Appeals.[10]

There is no evidence there was a stay pending appeal. The redemption period to pay the balance of the judgment was set to expire September 15, 2024, but three days before that date the Debtors filed their Chapter 13 petition.

CRS timely filed a claim for $178,025.13, consisting of $132,910.73 as of the date of the judgment and identified as the secured amount plus postjudgment interest, costs, and fees. The proof of claim also listed the amount necessary to cure the default as $45,114.40.

Debtors filed a Chapter 13 plan. Then they filed an amended plan. CRS objects to both.

CRS moved for relief from the automatic stay. Debtors object to that motion. Debtors also filed an objection to the CRS claim.

The Court held a hearing on the three matters. At the hearing, Debtors' counsel clarified that Debtors don't dispute that some amount may be owed to CRS. But they argue the total amount owed to CRS is substantially less and may be offset to zero considering their counterclaims that are pending appeal in the state court. So they ask that the Court estimate the amount of the CRS claim.

---

[10] The appellate docket shows that the matter has yet to be assigned to a judge. (*See* https://wscca.wicourts.gov/appealHistory.xsl?caseNo=2024AP001738&cacheId=9AB4E33D45216A420B512127DFA56652&recordCount=1&offset=0&linkOnlyToForm=false&sortDirection=DESC, last accessed June 25, 2025).

4

In response, CRS argues the matter has already been decided by the state court and their claim should be allowed in the filed amount. CRS agrees that the question is the estimated amount of its claim to be used in this bankruptcy case. They agree there is an appeal pending in state court and that a decision in the state court will determine the ultimate question of the amount owed. The parties agree that no evidentiary hearing is required and that the claim objection can be decided on briefs.

The record the parties have submitted in support and in opposition to the motion to determine the estimated amount of the claim and the parties' arguments are simply a rehash of the arguments presented in the state courts. It consists of affidavits, a Curriculum Vitae, the Land Contract, the Amendment to Land Contract, state court discovery and pleadings, the police report on the fire, state court briefs, the state court's Order for Summary Judgment, and the state court's Findings of Fact, Conclusions of Law, and Judgment of Strict Foreclosure.

Essentially Debtors ask this Court to assume that the trial court's judgment was wrong and should be overruled. If so, say the Debtors, the Court should grant an objection to the claim and reduce its amount to zero.

The contrary view of CRS is that the state court judgment is conclusive evidence of the amount of its claim. Neither side addresses whether the allowed amount of the claim is subject to potential change if the Debtors were to prevail in the state court appeal.

**DISCUSSION**

1. <u>Claims Estimation</u>

Section 502 of the Code governs the allowance of claims in bankruptcy. Although labeled a claim objection, the issue is narrower. The parties agree that the question to be decided is an estimation of the amount of the claim of CRS. It is the estimation of the claim for the purpose of consideration of a plan and for the motion for relief from stay.

Section 502(c) addresses claim estimation. Estimation simply means that the bankruptcy court may use its discretion in determining the allowability of claims in bankruptcy. *In re FV Steel & Wire Co.*, 372 B.R. 446, 453 (Bankr. E.D. Wis. 2007). It can be for broad or narrow purposes. *In re N. Am. Health Care, Inc.*, 544 B.R. 684 (Bankr. C.D. Cal. 2016). The purpose of estimation of claims is to avoid undue delay in the administration of a case. 11 U.S.C. § 502(c)(1). It is a mandatory and not permissive provision under proper circumstances to estimate an unliquidated or contingent claim.

There are several considerations for estimation here. First, neither section 502(c) nor estimation in general were discussed until the cursory briefs filed in this Court. Debtors didn't request estimation by motion or otherwise, although the objection to the claim did suggest that the value of the claim should be reduced by damages Debtors say they sustained.

Second, as the Bankruptcy Code states, a claim may be estimated only when the claim is contingent or unliquidated. The claim here is obviously not unliquidated. There is a judgment establishing the amount. The amount is only

6

contingent from the Debtors' point of view because they believe the state court was wrong in dismissing their counterclaim. Instead, they present the brief filed in the state appeal and ask that this Court rule that the state court judgment be reduced by the amounts they assert should have been determined by the state trial court. Certainly, there is a possibility the amount could change depending on the outcome of the state court appeal. As a result, the claim may change contingent upon a decision in that appeal.

Finally, estimation is appropriate where the time required to complete the allowance process "would unduly delay the administration of the case." *See* 11 U.S.C. § 502(c). A determination of the allowed amount of the claim is, as discussed below, ultimately dependent on a state appellate court. Briefing in that appeal is not even on a schedule for decision. There are two possible outcomes—the appeal will be unsuccessful and so the claim will be allowed as filed, or the appeal will be successful and (whether in the appellate court or on remand for further findings in the trial court) it will be in some potentially reduced amount.

The issue will probably not be resolved in the state court in time for sufficient progress toward a confirmable plan. The delay in addressing a plan is not in the best interests of the estate, its creditors, or the Debtors. And the property that is the subject of the CRS security interest appears to be central to the direction that a plan may take. So, estimation is appropriate.

2. Legal Standard for Claims Objections

Section 502(a) of the Bankruptcy Code provides that a filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). If the claim is properly filed, it is prima facie evidence that the claim is valid. Fed. R. Bankr. P. 3001(f). A party in interest may object to a proof of claim, and once an objection is made, the court must determine whether the objection is well founded. *See In re Nejedlo*, 324 B.R. 697, 699 (Bankr. E.D. Wis. 2005); 4 *Collier on Bankruptcy* ¶ 502.02[2] (16th ed. 2025).

"Claim objections operate under a burden-shifting framework with the claimant bearing the ultimate burden of proof by a preponderance of the evidence." *In re Komprood*, No. 23-11890-13, 2024 Bankr. LEXIS 1301, at *6 (Bankr. W.D. Wis. June 4, 2024). The objecting party must produce "evidence sufficient to rebut the claim." *In re Hood*, 449 F. App'x 507, 509–10 (7th Cir. 2011). Once the objector has produced evidence to overcome the presumption of validity and amount, the claimant must then produce additional evidence and must prove the validity of the claim by a preponderance of the evidence. *Nejedlo*, 324 B.R. at 699 (citing *In re Glenn*, 100 B.R. 763, 766 (Bankr. W.D. Pa. 1989)). Thus, the ultimate burden rests with the creditor, but only after the objector has produced sufficient evidence to rebut the claim. *Id.*

3. The *Rooker-Feldman* Doctrine

An initial question is whether this Court has jurisdiction to review the claim under the *Rooker-Feldman* doctrine, and if so, to what extent it may revalue the claim. Neither party addresses whether the *Rooker-Feldman*

doctrine applies. But each attorney made passing reference to the doctrine at the February status conferences in this case. Debtors' attorney said that the Debtors aren't asking this Court to overrule the state court foreclosure judgment. Nonetheless they're seeking to alter CRS's claim which is directly based on the judgment. And Debtors say that this Court may estimate CRS's claim because the Debtors have appealed the state court decision, so no final resolution has been made. Counsel for CRS, on the other hand, maintains that its claim has already been decided by the state court. CRS states in its brief that the Sawyer County Circuit Court correctly determined the amount owed by Debtors and requests this Court adopt the same valuation of the claim.

The *Rooker-Feldman* doctrine does not apply if a state court appeal of a challenged judgment is pending when federal suit is filed. *Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014), *overruled on other grounds by Hadzi-Tanovic v. Johnson*, 62 F.4th 394 (7th Cir. 2023).

> As the Ninth Circuit explained, *Saudi Basic Industries* clarified that proceedings end for *Rooker-Feldman* purposes when the state courts finally resolve the issue that the federal court plaintiff seeks to relitigate in a federal forum. It added that if the state-court appeal is pending at the time the federal action is filed, the necessary final resolution in the state system is not present. We agree with this reasoning and conclude that *Rooker-Feldman* does not bar the claims of federal-court plaintiffs who, like [Debtors], file a federal suit when a state-court appeal is pending.

*Parker*, 757 F.3d at 706 (internal citations omitted). Although the doctrine doesn't bar a federal court from hearing issues raised by a state court judgment currently on appeal, "in such circumstances, federal courts would

9

have powerful reasons to abstain until the state courts resolved the matter." *Hadzi-Tanovic*, 62 F.4th at 403.

And CRS has filed a claim which invokes this Court's jurisdiction. *Rooker-Feldman* only applies to claims asserted by "state-court losers." *See Exxon Mobil v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). By filing a proof of claim, CRS, the winner in state court, asserted a claim against the bankruptcy estate, invoking this Court's jurisdiction to "hear and determine . . . all core proceedings arising under title 11," including "allowance or disallowance of claims against the estate." 28 U.S.C. § 157(b)(1) and (2)(B). So *Rooker-Feldman* does not deprive this Court of jurisdiction to hear Debtors' objection.

4. Claim Preclusion

Although *Rooker-Feldman* doesn't deprive this Court of jurisdiction over the dispute, the Court must recognize the doctrine of claim preclusion. The Full Faith and Credit Clause of 28 U.S.C. § 1738 requires that this Court give the same preclusive effect to the state court judgment as another Wisconsin court would give it. *Exxon Mobil*, 544 U.S. at 282 ("Under 28 U.S.C. § 1738, federal courts must 'give the same preclusive effect to a state-court judgment as another court of that State would give.'" (quoting *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986))). Unlike *Rooker-Feldman*, preclusion is not a jurisdictional matter. *Exxon Mobil*, 544 U.S. at 293 (citing Fed. R. Civ. P. 8(c)). If a federal plaintiff "present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he

10

was a party . . . , then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." *Id.* (citing *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)).

"[C]laim preclusion provides that a final judgment on the merits in one action bars parties from relitigating any claim that arises out of the same relevant facts, transactions, or occurrences." *Kruckenberg v. Harvey*, 2005 WI 43, ¶ 19, 279 Wis. 2d 520, 694 N.W.2d 879 (citations omitted). Under this doctrine, "a final judgment is conclusive in all subsequent actions between the same parties as to all matters which were litigated or which might have been litigated in the former proceedings." *Lindas v. Cady*, 183 Wis. 2d 547, 558, 515 N.W.2d 458 (1994) (quoting *DePratt v. West Bend Mut. Ins. Co.*, 113 Wis. 2d 306, 310, 334 N.W.2d 883 (1983)).

In Wisconsin, claim preclusion has three elements: "(1) an identity between the parties or their privies in the prior and present lawsuits; (2) an identity of the causes of action in the two lawsuits; and (3) a final judgment on the merits in a court of competent jurisdiction." *Jacobson v. Wells Fargo Bank, N.A. (In re Jacobson)*, 614 B.R. 321, 327 (Bankr. E.D. Wis. 2020) (citing *Teske v. Wilson Mut. Ins. Co.*, 2019 WI 62, 387 Wis. 2d 213, 928 N.W.2d 555, 561 (Wis. 2019)).

Here, the first element cannot be reasonably disputed. Debtors were the defendants in the state court action and CRS was the foreclosing plaintiff. Debtors filed counterclaims against CRS and a third-party complaint against CRS's principals. But that third-party complaint and the counterclaim were

11

dismissed by the state court. Judgment in favor of CRS was granted. "[T]here is an identity of parties when the parties are for the most part, identical.") *See Teske*, 2019 WI 62, ¶ 27 (internal quotations omitted). Thus, there is an identity of the parties to the state court action and in this contested matter.

Second, in finding whether there is an identity of the causes of action in two proceedings, Wisconsin courts are guided by the "transactional approach" set forth in the *Restatement (Second) of Judgments* § 24 (1982). *Teske*, 2019 WI 62, ¶ 31. "[A]ll claims arising out of one transaction or factual situation are treated as being part of a single cause of action and they are required to be litigated together." *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 184 Wis. 2d 465, 480–81, 515 N.W.2d 904 (1994). The court "may consider whether the facts are related in time, space, origin, or motivation." *Teske*, 2019 WI 62, ¶ 32. (citing *Menard, Inc. v. Liteway Lighting Prods.*, 2005 WI 98, ¶ 30, 282 Wis. 2d 582, 698 N.W.2d 738).

This element is also satisfied. Without even considering whether the causes of action in the state court and here arose out of the same *transaction*, the claims are nearly identical on their face. This conclusion is confirmed by the simple fact that both parties submit and rely on the documents, select pleadings, and state court briefs as the support for their respective positions.

Debtors' arguments in support of their objection to CRS's claim are the same as the arguments they made in state court. They argue that CRS's claim is overstated and must be reduced based on setoff. Their support for the argument in this Court is the same affidavits submitted with their state court

summary judgment motion.[11] They also submit the deposition transcript of the corporate representative of CRS taken in connection with their state court motion for summary judgment[12] and the summary judgment motion itself.[13]

Next, Debtors say that CRS's claim is unsupported given the "established" counterclaims and damages.[14] They repeatedly reference the state court proceeding and even acknowledge that they're making the same argument as stated in their "failed" state court summary judgment motion.[15] They claim here, as they did in state court, that CRS engaged in a pattern of fraudulent misrepresentation and misapplication of payments, and that CRS improperly allocated funds designated for taxes and insurance, causing them significant financial harm.

CRS, for its part, simply argues that the basis for the value of its claim is the judgment entered in the Sawyer County foreclosure action. It says the state court correctly determined the amount owed by Debtors and they request that this Court adopt the same valuation of its claim. And it believes there were sufficient findings of fact to support the state court judgment.

---

[11] Debtors' Brief in Support of Claim Objection, ECF No. 84, Exs. A, C, E. The same affidavit of Mr. Patterson was attached to Debtor's original claim objection (ECF No. 52, Ex. B).

[12] *Id.*, Ex. D.

[13] *Id.*, Ex. B.

[14] Debtors' Brief in Support, ECF No. 84, p. 4 of 5.

[15] Debtors' Brief in Support of Claim Objection, ECF No. 84, p. 2 of 5.

Thus, there is an identity of the causes of action between the state court summary judgment motions and the Debtors' claim objection here, because the facts and arguments are themselves identical.[16] But further, the claims in each case arise out of the same transaction and "common nucleus of operative facts." *Teske*, 2019 WI 62, ¶ 32 (citing *Menard*, 2005 WI 98, ¶ 30). Everything in this dispute stems from the Debtors' land contract with CRS, lapsed insurance payments, alleged misapplication of payments, and the Debtors' eventual default.

The third and final element is also satisfied. The state court issued a final judgment on the merits. Unlike *Rooker-Feldman*, which under Seventh Circuit case law doesn't apply if a judgment is pending appeal, claim preclusion does apply under Wisconsin case law here. In other words, the foreclosure judgment is final even though Debtors have appealed. "[T]here is no requirement that the appeals process be exhausted before a judgment becomes final and has preclusive effect." *Goeben v. Vill. of Bellevue*, No. 2024AP702, 2025 Wisc. App. LEXIS 480, at *11–12 (Wis. Ct. App. June 3, 2025) (citing *Town of Fulton v. Pomeroy*, 111 Wis. 663, 669, 87 N.W. 831 (1901)).

"Even an appeal does not deprive a judgment of its effect as a bar to another action. It may be pleaded and relied upon pending such appeal with the same effect as if no appeal had been taken." *Goeben*, 2025 Wisc. App.

---

[16] Debtors' final argument is that their plan complies with 11 U.S.C. § 1325. This argument will be considered at a hearing on confirmation of Debtors' plan. The Court's focus here is resolving the claim objection.

14

LEXIS 480, at *11–12 (citing *Pomeroy*, 111 Wis. at 669); *Kalan v. City of St. Francis*, No. 95-0643, 1995 Wisc. App. LEXIS 1285, at *6 (Wis. Ct. App. Oct. 17, 1995) ("[A] pending appeal does not deprive an otherwise final judgment of its preclusive effect unless and until the judgment is reversed.") (citing *Pomeroy*, 111 Wis. at 669). Moreover, the decision of the Sawyer County Circuit Court makes clear: "This order is a final judgment for appeal purposes."[17]

The Court adds that a decision made on summary judgment constitutes a decision "on the merits," and is therefore sufficient for claim preclusion. *State v. Miller*, 2004 WI App 117, ¶ 28, 274 Wis. 2d 471, 683 N.W.2d 485 (ruling that "a final judgment on the merits need not be the result of a full litigation of the claims in order for claim preclusion to apply," and observing that both a stipulation and a default judgment may meet the requirement). *See also Qualls v. NIU Bd. of Trs.*, 272 F. App'x 512, 513–14 (7th Cir. 2008) ("[S]ummary judgment is a final judgment on the merits for purposes of claim preclusion.") (citing *Spiegel v. Cont'l Ill. Nat'l Bank*, 790 F.2d 638, 645 (7th Cir. 1986)). No argument has been made in this regard, but for the sake of clarity, this Court finds that the Sawyer County Circuit Court's decision is a final judgment on the merits.

Finally, it's important to note that while the doctrine of issue preclusion includes an equitable consideration of "fairness," claim preclusion does not. "The Wisconsin Supreme Court has not adopted a general fairness factor as

---

[17] CRS's Brief in Opposition, ECF No. 85, Ex. 6, p. 4 of 4.

part of its claim-preclusion doctrine." *Gilbank v. Wood Cty. Dep't of Hum. Servs.*, 111 F.4th 754, 775 (7th Cir. 2024) (citing *Adams Outdoor Adver. Ltd. P'ship v. City of Madison*, 56 F.4th 1111, 1118 (7th Cir. 2023)). The Court here must abide by the state court's decision and give it preclusive effect.

While Debtors might prevail in the state court appeal, at present this Court has before it a final judgment with sufficient findings of fact to support the judgment. The claims Debtors say should reduce or offset that judgment were litigated and dismissed by the state trial court. So at this time for the purpose of a claim estimation, the CRS claim is estimated as allowed in the amounts as stated in the filed claim.

This decision is an estimation for the purposes of proceeding with a plan confirmation. In the event the Debtors prevail in the state court appeal and there is a setoff or allowed counterclaim in favor of Debtors and against CRS, then the Debtors would have the opportunity to seek to amend any confirmed plan or to pursue other remedies to realize on any judgment they may obtain against CRS.

5. <u>Valuation of the Homestead</u>

Debtors also include an underdeveloped argument in their brief about the valuation of the property. They contend that CRS's $132,910.73 secured claim must be reduced because the alleged value of the property is only $122,300.

No motion for valuation has been filed. The initial objection to the CRS claim failed to raise the value of the real property and its impact on a determination of the extent of the secured amount of the CRS claim.

Debtors provide no evidentiary support for this assertion—no appraisal, tax assessment, broker's price opinion, offer to purchase, or other facts. Regarding valuation of the property, Debtors simply point to the listed value of their property on Schedule A/B.[18]

Until their brief, the sole focus of their argument was the alleged right to set off CRS's claim, which has already been decided by the state court. The "evidence" Debtors provide to support that position are the three affidavits of Mr. Patterson (who doesn't offer an opinion on the value of the property)[19] and the state court deposition transcript of CRS's principal, all of which only reinforce their setoff argument.

Now, at the stage of briefs, they also argue that the value of the secured portion of the claim should be less than on the filed claim because their schedules contain a lesser value. The Debtors agreed no evidentiary hearing was needed. The amount listed in the schedules is merely the Debtors' opinion

---

[18] Debtors' Brief in Support of Claim Objection, ECF No. 84, p. 3 of 5. In fact, Debtors cite "(Doc. 36)" which is CRS's motion for relief from stay. But CRS attaches Debtors' Schedule A/B as an exhibit to their motion, which this Court presumes is the reason why Debtors cite to that docket entry.

[19] The three affidavits of Mr. Patterson only provide an opinion as to the alleged misapplication of payments, not the fair market value of the property. *See generally*, Debtors' Brief in Support of Claim Objection, ECF No. 84, Exs. A, C, and E.

17

about value. Their opinion is not evidence. The schedules are merely documents filed that anyone could observe has a representation of what the Debtors say is the value. *See* Fed. R. Evid. 201.

A timely filed proof of claim is prima facie evidence of the claim's validity. 11 U.S.C. § 502(a). An objecting party must produce sufficient evidence to rebut the claim, and only then does the burden shift back to the claimant to prove their claim by a preponderance of the evidence. *Nejedlo*, 324 B.R. at 699.

Debtors have failed to rebut CRS's claim. Debtors haven't submitted any admissible evidence showing the value of their homestead is $122,300 in connection with this claim objection, or indeed at any time throughout the pendency of this case.[20] Thus, they've failed to adequately rebut the validity of CRS's secured claim in the amount of $132,910.73.

## **CONCLUSION**

The Court overrules Debtors' objection to CRS's claim and finds that CRS's claim is appropriately valued at $178,025.13, of which $132,910.73 is secured.

---

[20] *See, e.g.*, Debtors' Objection to CRS's Motion for Relief from Stay, ECF No. 42, (Debtors attach an account ledger from the Chapter 13 trustee's website, a request to amend their Chapter 13 plan, and their state court appellate brief); Debtor's Objection to CRS's Claim, ECF No. 52 (Debtors again attach their state court appellate brief, and an affidavit from Mr. Patterson); Debtor's Brief in Support of their Amended Plan, ECF No. 53 (attaches account ledger); Debtor's Exhibit List, ECF No. 73 (submitted in anticipation of the originally scheduled final hearing) (attaches 10 exhibits, none of which provide an assessment of fair market value); Debtor's Brief in Support of Claim Objection, ECF No. 84 (attaches three affidavits of Mr. Patterson, a deposition transcript of CRS's principal, and Debtors' state court summary judgment motion).

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: July 1, 2025

                                        BY THE COURT:

                                        Hon. Catherine J. Furay
                                        U.S. Bankruptcy Judge